Daniel Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

FILED
U.S. DISTRICT COURT

2011 DEC 15 A 9:33

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>MANAGEMENT SOLUTIONS, INC., a Texas Corporation; WENDELL A. JACOBSON; and ALLEN R. JACOBSON,<br><br>DEFENDANTS. | COMPLAINT<br><br>Case: 2:11cv01165<br>Assigned To : Jenkins, Bruce S.<br>Assign. Date : 12/15/2011<br>Description: SEC v. Management Solutions et al |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Management Solutions, Inc., Wendell A. Jacobson, and Allen R. Jacobson (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1. This matter involves an ongoing offering fraud and Ponzi scheme operated by Wendell A. Jacobson ("Wendell Jacobson") and his son Allen R. Jacobson ("Allen Jacobson"). Operating from a base in Fountain Green, Utah, through a complex web of over 200 entities, Wendell Jacobson and Allen Jacobson have raised more than $200 million from approximately 225 investors. The Defendants have raised investment funds through material and pervasive

misrepresentations, and have operated the investment program as a wide-scale Ponzi scheme since at least January 1, 2008.

2. Wendell and Allen Jacobson purport to offer investors the opportunity to invest in limited liability companies ("LLCs") that directly or indirectly own large, multi-unit apartment communities in eight states. Wendell and Allen Jacobson represent to investors that they buy apartment complexes at significantly discounted prices with low occupancy rates, renovate them, improve their management, and eventually seek to sell them within five years. This business is operated under the umbrella of Management Solutions, Inc. ("MSI"), which is wholly-owned by Wendell Jacobson.

3. The Defendants make various representations to investors in the LLCs, for example, that their returns will be derived from the apartment complex in which they have invested and will not be commingled with other funds; that none of the Jacobsons, MSI, nor investors have ever lost money on a property; and that Wendell Jacobson or one of his wholly-owned entities always owns and has contributed at least 50% of the funding for each LLC. These representations to investors are false.

4. Moreover, Defendants do not disclose to investors that the investor funds are immediately diverted to, and pooled in, one of several large bank accounts, most commonly in the account of Thunder Bay Mortgage Company ("Thunder Bay"). Each of the pooled accounts, including Thunder Bay, is wholly-owned by Wendell Jacobson. After commingling and pooling new investor funds into these accounts, the Defendants then redirect the funds to pay operating expenses of the numerous entities and also to pay promised returns to earlier investors.

5. Because investor funds in Thunder Bay and other accounts are pooled and used to pay returns to other investors, Defendants' operation is a classic Ponzi scheme.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

7. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

8. Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

9. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

10. Defendants' conduct took place in connection with the offer, purchase and/or sale of membership interests in LLCs controlled by Wendell Jacobson.

## DEFENDANTS

11. **Management Solutions, Inc.** ("MSI") is a Texas corporation with its principal place of business in Fountain Green, Utah. It is wholly-owned by Wendell Jacobson.

12.  **Wendell A. Jacobson**, age 58, is the founder and controlling person of numerous entities that own and manage over 8,000 units in apartment complexes located in eight different states. He resides in Fountain Green, Utah.

13.  **Allen R. Jacobson**, age 33, is the son of Wendell Jacobson and has the designated responsibility to meet with and manage MSI's investor relations. He resides in Fountain Green, Utah.

## STATEMENT OF FACTS

### BACKGROUND

14.  For approximately 25 years, Wendell Jacobson has been in the business of purchasing, renovating, managing and reselling multi-unit apartment complexes.

15.  Wendell Jacobson's operation is conducted under the umbrella of MSI. MSI's stated goal is to identify multi-family apartment communities with low occupancy rates and, by rehabilitating them and improving their on-site management, increase their occupancy, their rent collections rate, and ultimately their resale value. MSI seeks to resell the apartment complexes at a substantial profit within three to five years.

16.  Wendell and Allen Jacobson solicit investors to invest in MSI's operation. Investors purchase membership interests in LLCs that, directly or indirectly, own particular apartment properties (collectively, the "Investor LLCs").

17.  Typically, Wendell Jacobson creates a new Investor LLC and bank account for each new investor or group of investors. Frequently, ownership is structured such that investors own membership interests in Investor LLCs that own interests in other LLCs.

18.  To date, Wendell Jacobson has formed over 200 Investor LLCs.

19.  Wendell Jacobson is the managing member of each Investor LLC and is the signatory on every bank account in the name of an Investor LLC.

4

20. To date, Wendell and Allen Jacobson have sold LLC membership interests to approximately 225 investors, raising at least $200 million.

21. Wendell and Allen Jacobson solicit investors personally and through word of mouth. Wendell Jacobson and Allen Jacobson both belong to the Church of Jesus Christ of Latter Day Saints ("LDS Church"), and appear to have used their membership and the connections arising therefrom to find and obtain the trust of prospective investors.

22. Allen Jacobson also solicits investors by means of a Salt Lake City entity by the name of Caddis Partners, LLC ("Caddis"), of which he is a 50% owner. Caddis has created the Multi-Family Fund, a fund that invests solely in selected Investor LLCs, and appears to function as a means to aggregate smaller investments. To date it has raised approximately $1.5 million for MSI.

23. Wendell Jacobson has also formed at least four entities of which he is the sole owner. The four entities are MSI, Thunder Bay, Squaw Springs and Council Properties (collectively, the "Jacobson-owned Entities"). The Defendants use the Jacobson-owned Entities to collect and pool the investor funds raised through the numerous Investor LLCs.

24. Wendell Jacobson is the signatory on the bank account maintained in the name of each of the Jacobson-owned Entities.

25. In order to invest, the Defendants form an Investor LLC and direct the investor to deposit by check or wire transfer cash into the newly-formed Investor LLC's bank account. The investment ostensibly provides the investor with a membership in the Investor LLC in proportion to his/her investment, and entitles the investor to a return at a promised rate, generally between 5-8% per year, paid monthly. The investor also generally executes an Operating Agreement with the Investor LLC.

26. When investor funds are received by an Investor LLC, however, they are almost always immediately transferred to, and pooled in, an account belonging to one of the Jacobson-owned Entities, usually Thunder Bay.

27. Funds maintained in the accounts of the Jacobson-owned Entities are used for a wide variety of purposes, including, operating needs of Investor LLCs; other expenses of the Jacobson-owned Entities and the Jacobson family; and payment of returns to investors in Investor LLCs.

28. Defendants sold securities in the form of investment contracts. No registration statement has been filed as to those securities.

29. Wendell and Allen Jacobson are acting as unregistered brokers in connection with their offers and sales of membership interests in Investor LLCs. They are doing so by actively and continuously soliciting investors and handling investor funds.

## REPRESENTATIONS TO INVESTORS

30. Wendell and Allen Jacobson tell investors that their principal will be safe, that it will be used to acquire, rehabilitate, and manage certain identified properties, and that they will receive a return of between 5% and 8% a year, depending on the performance of the apartment complex in question. They also tell investors that MSI's track record has been to achieve a return of 12% to 15% a year for investors, due to its expertise in renovating and managing apartment complexes.

31. Wendell and Allen Jacobson tell investors that they can expect profits from two sources: first, from the operations of that particular piece of property in which their funds will be invested – i.e., the rental income; and, second, from additional profit at the time the property is sold.

32. Wendell and Allen Jacobson tell investors that investor funds designated for a particular LLC are not commingled with the funds of any other entity.

33. Wendell Jacobson tells investors that he has never lost money on a property, except once—and that, on that occasion, he covered the loss personally so that investor returns would not be reduced.

34. Wendell and Allen Jacobson also tell investors that at all times a Jacobson-owned entity will have an ownership interest of at least 50% in each Investor LLC, and that the Jacobson-owned Entity will contribute at least 50% of the funding to each Investor LLC. The Jacobsons further tell investors that investor returns are always paid first, and that the Jacobson-owned Entity takes the remaining amount, or covers any resulting loss. In this way investors are reassured that the Defendants' funds are always at risk along with theirs, and that the Defendants' funds protect the investors from any potential loss.

35. Wendell and Allen Jacobson represent to investors, both face-to-face and in MSI's marketing materials, that MSI's operation is successful and presents an extremely desirable investment opportunity.

## THE REPRESENTATIONS MADE TO INVESTORS WERE FALSE

36. Investor funds do not remain with the Investor LLC account into which they are originally paid. Instead, they are almost always immediately diverted to one of the collecting accounts, most commonly Thunder Bay, where they are commingled and then used for other purposes, including to pay returns to earlier investors. On occasion investor funds have also been pooled into accounts belonging to Squaw Springs, Inc. and Council Properties, LLC, both of which are 100% owned by Wendell Jacobson.

37. The investor funds are never held and used exclusively to acquire, rehabilitate, and operate the subject property as represented.

38. Because he is the signatory on all of the bank accounts maintained by the Investor LLCs and the Jacobson-owned Entities, Wendell Jacobson has exclusive control over the accounts and is able to move funds among entities at will.

39. Investor funds pooled in Thunder Bay and the Jacobson-owned entities were used to meet the operating needs of other Investor LLCs; to pay other expenses of the Jacobson-owned Entities and the Jacobson family; and to pay returns to investors in other Investor LLCs.

40. The Jacobson-owned Entities almost never contribute the 50% funding in the Investor LLCs as promised. At most Wendell Jacobson causes the Jacobson-owned Entity to deposit the specified percentage into the Investor LLC account, but then immediately that same day or thereabout transfers the amount back to the Jacobson-owned Entity. The balance sheet of the Investor LLC in question then simply reflects only a receivable owing by the Jacobson-owned Entity.

41. For example, investors placed over $480,000 in an Investor LLC named River Royal, LLC ("River Royal") after receiving assurances from the Jacobsons that Council Properties, a Jacobson-owned Entity, would contribute $500,000 to satisfy the 50% requirement. In reality, Council Properties deposited $500,000 into the River Royal account on December 30, 2009, but the very same day Wendell Jacobson caused River Royal to wire the $500,000 right back to Council Properties. The balance sheet for River Royal contains only a line item for a note receivable from Council Properties. Council Properties has never paid the fictitious $500,000 note.

42. Wendell Jacobson represents to investors that he has never lost money on a property. Through Caddis, MSI has represented to investors that its four *worst-performing* years still showed a positive average annual return of nearly 13%.

43. In fact, Investor LLCs are experiencing significant net losses. Nevertheless, these Investor LLCs continue to pay returns to investors, falsely leading those investors to believe their LLCs are operating at a profit.

44. For example, investors in four Investor LLCs (Dimazio, LLC; Alson, LLC; Goose Brook, LLC; and Autumn Hills, LLC) received 6% to 8% per year interest on their investments, paid monthly. Nevertheless, for the year ending December 31, 2010, the combined income from the four entities was only $33,210, and the combined expense was $1,286,110. Therefore, the four entities lost a total of $1,252,900 during 2010, making it impossible for the promised returns to be paid from the profits of the businesses. Instead, the returns were Ponzi payments derived from investors who had invested in other Investor LLCs.

45. On numerous occasions since January 1, 2010 investors have been told that the property their Investor LLC owned has been sold, and that they have realized a profit on that sale. In fact, those properties were not sold. Rather, the Defendants used these alleged "sales" as a means of shifting investors into and out of certain properties, operating a shell game with the intent to raise additional funds from new and/or existing investors that were necessary to meet the rapidly growing financial obligations of the operation.

46. For example, investors in Tennessee Park, LLC ("Tennessee Park") were told that the apartment complex owned by that LLC had been sold for $15 million in the summer of 2011. The Defendants had acquired the Tennessee Park property through a straw buyer in June 2010 for $2.7 million. Three weeks later, the Defendants "sold" the Tennessee Park property to the Tennessee Park Investor LLC in July 2010 – three weeks after the initial acquisition—for $7.2 million. The Tennessee Park investors were never informed that the Defendants owned the property

prior to the sale to Tennessee Park, or that the actual purchase price was nearly three times lower than the price represented.

47. In announcing the fictitious sale of the Tennessee property for $15 million, the Defendants represented to the investors that they had realized a gain of 20.7%. In fact, the Tennessee Park property was never sold at all. Rather, the Defendants had simply obtained $15 million in financing on the project from Guggenheim Life and Annuity Company. A review of the property tax records indicate the Tennessee Park Apartments are still owned by Jacobson-owned Entities.

48. Similar misrepresentations that properties had sold were made in a newsletter issued by MSI to investors, called "The Partner Post." For example, The Partner Post falsely stated that Jefferson Chase Apartments and Lake Ridge Apartments had been sold, but these properties are still owned by Investor LLCs.

49. Investor returns, whether purportedly from the operations of properties or from a gain on their sale, are being paid from new investor funds.

50. For example, in July 2010 the Defendants announced the fictitious sale of the King George/Parkview Place Apartments ("Parkview Place") property. Because the property had not actually been sold, let alone at the profit announced, the Defendants needed a source of funding to pay the promised returns.

51. On August 18, 2010, the Defendants successfully brought into Tennessee Park a $2.4 million investment from a single investor, ostensibly to provide the investor with an interest in the underlying Tennessee Park properties. However, the very same day Wendell Jacobson caused the $2.4 million to be transferred from the Tennessee Park account to the Thunder Bay account. On August 19, 2010, the very next day, Wendell Jacobson caused Thunder Bay to wire

$1,665,000 into the Parkview Place account, which was then used to pay $1,646,483 in returns to investors from a fictitious sale of the Parkview Place property.

52. Without the infusion of cash from Thunder Bay, Parkview Place would not have had sufficient funds to pay the returns. Likewise, without the infusion of cash from Tennessee Park, Thunder Bay would not have had sufficient funds to transfer to Parkview Place.

53. In this way funds from new investors in Tennessee Park were used to pay returns to investors in Parkview Place, as is typical of a Ponzi scheme.

54. Taken as a whole, MSI's operation is insolvent. Thunder Bay is the clearinghouse into which almost all investor funds flow. From Thunder Bay, these funds are directed to various operational expenses and used to pay investor returns.

55. Thunder Bay is insolvent and unable to pay its bills as they fall due. As of December 31, 2010, Thunder Bay owed investors and Investor LLCs more than $103 million. As of the same period, Thunder Bay showed a net loss of over $2.2 million. Having no actual operations, Thunder Bay relied almost entirely on new investor funds as its source of funding. Without these new investor funds, Thunder Bay would immediately cease to operate.

56. The Thunder Bay Chase bank account for the period July 1, 2011 to July 31, 2011 shows more than $46 million in transactions, with a beginning and ending balance, respectively, of $300,954 and $195,575. Virtually all of the transactions were between and among Jacobson-owned Entities and Investor LLCs.

57. Defendants knew, or were reckless in not knowing, that investor funds were not being directed to their Investor LLC but were being pooled in Thunder Bay; that a Jacobson-owned Entity had not contributed a 50% ownership interest to each Investor LLC; that the Investor LLCs were not profitable; that the entire operation was insolvent; that other

misrepresentations were being made concerning the sale of various properties; and that investor funds were being used to pay returns to earlier investors.

58. Defendants' misrepresentations and omissions were material. Had the investors known of these serious misrepresentations, and the true nature of the operation run by the Defendants, the investors likely would not have invested in the operation.

## ONGOING SOLICITATIONS AND THE RESCISSION OFFERS

59. On November 2, 2011, a new investor invested $2 million in an Investor LLC. His primary contacts in making this investment were Wendell and Allen Jacobson. To solicit and secure the investment, the Jacobsons made the same false representations to this investor that had been made and repeated to other investors.

60. Allen Jacobson continues to actively solicit new investor funds through Caddis.

61. In late November 2011, counsel for the Defendants informed the Commission that rescission offers were being made to members of Investor LLCs. Counsel provided six of these "Repurchase Memoranda" to the Commission. In early December 2011, counsel confirmed that these Repurchase Memoranda had been signed by Wendell Jacobson and sent to investors. Counsel further informed the Commission that the Defendants intended to make similar rescission offers, signed and executed by Wendell Jacobson, to members of all the Investor LLCs. He stated that these rescission offers are currently going out to investors on a rolling basis, and investor responses are already being received.

62. The six Repurchase Memoranda that have been provided to the Commission to date in themselves are not registered with the Commission and constitute fraudulent offers, because they misrepresent, or fail to disclose, material facts to investors.

63. For example, the memorandum for the Tennessee Park LLC states that the reason for the rescission offer is a possible ministerial failure to register the offering under the Securities Act, when the Defendants' counsel has received a copy of the Formal Order of Investigation and knows or should know that it references a fraud investigation; the memorandum represents that the Tennessee Park property was sold and thereby generated a 20.7% return to investors, when no sale of the property actually took place; and the memorandum does not disclose that MSI is insolvent and operating a Ponzi scheme.

### FIRST CAUSE OF ACTION
### EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
### Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

64. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

65. Defendants, and each of them, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

66. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### SECOND CAUSE OF ACTION
### FRAUD IN THE OFFER AND SALE OF SECURITIES
### Violations of Section 17(a)(2) and (3) of the Securities Act
### [15 U.S.C. § 77q(a)(2) and (3)]

67. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

68. Defendants, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

69. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### THIRD CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

70. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

71. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

72.     By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### FOURTH CAUSE OF ACTION
### OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

73.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

74.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, or carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

75.     No registration statement has been filed with the Commission or has been in effect with respect to these securities.

76.     By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FIFTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN
### UNREGISTERED BROKER OR DEALER
### Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

77.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

78.     Defendants Wendell Jacobson and Allen Jacobson, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in,

or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

79. By reason of the foregoing, Defendants Wendell Jacobson and Allen Jacobson violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Wendell Jacobson and Allen Jacobson and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5 thereunder.

### III

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin MSI and its officers, agents, servants,

employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

IV

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that temporarily, preliminarily and permanently enjoin Defendants, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from: (A) transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of these Defendants; and (B) transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of MSI or related entities, including but not limited to those entities identified in accompanying pleadings.

V

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of them, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored

electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

## VI

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

## VII

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

## VIII

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets, appointment of a receiver for MSI and related entities and the acceleration of discovery, including the forthwith production of documents.

## IX

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated December 15, 2011.

Respectfully submitted,

_____
Daniel Wadley (Utah State Bar No. 10358)
WadleyD@sec.gov
Thomas M. Melton (Utah Bar No. 4999)
meltont@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Tel. 801-524-5796