IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

SECURITIES AND EXCHANGE )
COMMISSION, )
                                    )     Civil No. 2:11-cv-01165-BSJ
            Plaintiff, )
                                    )
vs. )                                     **MEMORANDUM OPINION & ORDER**
                                    )     **RE: MOTION FOR ENFORCEMENT**
MANAGEMENT SOLUTIONS, INC., a )           **OF CONTRACTUAL PREPAYMENT**
Texas Corporation; WENDELL A. )           **PREMIUMS AND FOR PARTIAL**
JACOBSON; and ALLEN R. )                  **RELIEF FROM STAY**
JACOBSON, )
                                    )     ┌─────────────────────────────┐
            Defendants. )                 │         **FILED**           │
                                    )     │ CLERK, U.S. DISTRICT COURT  │
                                    )     │ February 15, 2013 (3:37pm)  │
                                    )     │     DISTRICT OF UTAH        │
                                    )     └─────────────────────────────┘

* * * * * * * * *

On September 27, 2012, this Court granted Fannie Mae's Motion to Intervene as a

secured creditor in the present case.[1] At a scheduling conference on December 19, 2012, Fannie

Mae and the Receiver agreed that the issues presented were capable of resolution by motion. As

such, this Court ordered Fannie Mae to file a motion concerning the enforceability and recovery

of its contractual prepayment premiums and related issues.[2] The motion, along with supporting

and opposing memoranda, was filed, and this Court heard arguments of counsel on February 8,

2013. This Court now denies the motion without prejudice and has chosen to elaborate upon the

---

[1] (ORDER granting Fannie Mae's Motion to Intervene, filed September 27, 2013
(CM/ECF No. 533).)

[2] (ORDER, filed January 3, 2013 (CM/ECF no. 817).)

reasons for denying the motion at this time.

**FANNIE MAE'S MOTION**

On January 18, 2013, Fannie Mae filed the current motion, asserting it was entitled to

recover prepayment premiums and seeking relief from the Court's Order Appointing Receiver,

Freezing Assets and Other Relief as to four properties in the receivership estate.[3] Fannie Mae

sought relief from the Courts Order because, should the prepayment premiums be enforceable,

the Receiver would have no equity in these properties and gains nothing by keeping them in the

receivership estate.

Fannie Mae summarized its reasoning for the motion as follows:

> The grounds for this Motion are that Fannie Mae's prepayment premium is a valid
> and enforceable contract right which the Receiver, through his predecessors, the
> various Jacobson-entity borrowers, agreed to and received valid consideration for
> - including more favorable loan terms. Claims in a receivership are defined by
> state law, and prepayment premiums are routinely enforced under the laws of the
> states where each Property is located. Even more to the point, prepayment
> premiums have been held to be enforceable and recoverable by a secured creditor
> in criminal forfeiture actions, and they likewise have been found to be
> recoverable by secured creditors in the similar equitable setting of bankruptcy. . . .
> Fannie Mae's prepayment premium, which constitutes and defines a portion of
> the extent of its liens herein, should be honored, as should all of the undisputedly
> valid and enforceable commercial lending contracts in which they appear.[4]

The Securities and Exchange Commission ("SEC"), the Receiver, and the Amicus MSI

Investor Group submitted opposing memoranda with similar arguments.[5] The core argument of

---

[3] (Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay and Memorandum in Support filed by Intervenor Defendant Fannie Mae, filed January 18, 2013 (CM/ECF No. 865).)

[4] (*Id.* at ii-iii).

[5] (Memorandum in Opposition re Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay and Memorandum in Support filed by Plaintiff Securities and Exchange Commission, filed January 30, 2013 (CM/ECF No. 886); Memorandum in Opposition

the SEC, Receiver, and MSI Group is that this Court has broad equitable powers in determining

relief and in determining the distribution in an equitable receivership; because Fannie Mae's

prepayment premiums are not equitable or fair in light of the ultimate distribution scheme of the

receivership estate, Fannie Mae's prepayment premiums should not be enforced. This Court,

they argue, has the power to suspend certain rights and deny equitable relief that would

otherwise be available under State law. The SEC further argues that the bankruptcy cases cited

by Fannie Mae are inapplicable because bankruptcy law does not apply in non-bankruptcy

equitable receiverships.[6] The Receiver argues that, regardless of the applicability of bankruptcy

laws, bankruptcy courts routinely limit remedies available to secured creditors.[7] In addition, the

Receiver notes Fannie Mae cited no equitable receivership cases that enforced prepayment

premiums,[8] and the Receiver notes Bankruptcy cases have denied prepayment premiums

calculated using U.S. treasury notes. Lastly, the Amicus MSI Investor Group argued that

granting the motion would "open the floodgates" to other secured creditor claims, and the

---

re Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay and
Memorandum in Support filed by Receiver John A. Beckstead, filed January 30, 2013 (CM/ECF
No. 888); Memorandum in Opposition re Motion to Enforce Contractual Prepayment Premiums
and for Partial Relief from Stay and Memorandum in Support filed by Amicus MSI Investor
Group, filed February 4, 2013 (CM/ECF No. 899).)

[6](Memorandum in Opposition re Motion to Enforce Contractual Prepayment Premiums
and for Partial Relief from Stay and Memorandum in Support filed by Plaintiff Securities and
Exchange Commission, filed January 30, 2013 (CM/ECF No. 886 at 5).)

[7] (Memorandum in Opposition re Motion to Enforce Contractual Prepayment Premiums
and for Partial Relief from Stay and Memorandum in Support filed by Receiver John A.
Beckstead, filed January 30, 2013 (CM/ECF No. 888 at 8).)

[8] In fact, no party cited a non-bankruptcy equitable receivership case that directly
addresses the issue of prepayment premiums claimed by a secured creditor.

motion is premature because no sale of properties underlying Fannie Mae's claim is pending.[9]

## JUDICIAL POWERS IN AN EQUITABLE RECEIVERSHIP

"A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1569-70 (11th Cir. 1992). Because of the court's broad equitable powers, the decisions made by a court in such proceedings will only be reviewed for an abuse of discretion. *See e.g. SEC v. Forex Asset Management, LLC*, 242 F.3d 325 (5th Cir. 2001). In receivership cases, a decision withstands the abuse of discretion standard if the decision is fair and reasonable. *See e.g. SEC v. Wealth Mgmt LLC*, 628 F.3d 323 (7th Cir. 2010).

When fashioning a fair and reasonable decision, courts often look to analogous principles found in bankruptcy and other non-federal receivership cases. *In SEC v. Wing*, 599 F.3d 1189 (10th Cir. 2010), the Tenth Circuit acknowledged that "non-bankruptcy receiverships are relatively rare," and determined the issue before it—whether a court had exceeded its powers by declining to lift the stay that barred a foreclosure by a secured creditor—was an issue of first impression. Given the rarity of case law on these topics, bankruptcy and other cases, though not determinative, may be instructive as to general principles of law or determining what is equitable. *See Wing v. Yager*, 2003 WL 23354487 (D. Utah 2003)("[B]ankruptcy cases are not directly on point because much of the regulatory framework and policy considerations . . . may not be applicable in an equitable receivership context. Nonetheless, some of the reasoning in these cases is instructive to a determination of . . . whether a transfer was made with an intent to

---

[9] (Memorandum in Opposition re Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay and Memorandum in Support filed by Amicus MSI Investor Group, filed February 4, 2013 (CM/ECF No. 899 at 2-3).)

defraud.").

Among the court's broad equitable powers is the power to deny equitable remedies, granted under controlling state law, when allowing those remedies would result in inequity. *See e.g. United States v. Vanguard Inv. Co.*, 6 F.3d 222 (4th Cir. 1993). The *Vanguard* receivership resulted from Vanguard Investment Company's violation fo the Small Business Investment Act. *See id.* A corporation sought classification as a creditor, claiming it had been "fraudulently induced to subscribe to Vanguard preferred stock and . . . entitled to rescission . . . and restitution." The Fourth Circuit held that the corporation may be classified as a creditor under state law, but it still may not be entitled to these contractual remedies. The court explained, "Given its equitable nature and purposes, a district court supervising such a receivership has the discretionary power to deny these equitable remedies as inimical to receivership purposes even though they are or might be warranted under controlling law." *Id* at 226. The Fourth Circuit followed the reasoning of the Eleventh Circuit in *Elliot*:

> to allow any individual to elevate his position over that of other investors similarly "victimized" by asserting claims for restitution and/or reclamation of specific assets based upon equitable theories of relief such as fraud, misrepresentation, theft, etc. would create inequitable results, in that certain investors would recoup 100% of their investment while others would receive substantially less . . . . In the context of this receivership the remedy of restitution to various investors seeking to trace and reclaim specific assets as originating with them is disallowed as an inappropriate equitable remedy.

*Elliot*, 953 F.2d at 1569.

The purpose of receiverships in cases such as *Vanguard*, *Elliot*, and the case before us is to provide some remedy to victims in as equitable manner as possible. *See id.* Allowing certain remedies provided by state law to specific entities and not to other similarly situated entities

would go against the very purpose of the receivership. *See id.* As such, the court denied Elliot restitution and rescission remedies to investors, and the court in *Vanguard* directed the district court to consider the equity of such remedies in deciding whether or not to allow them on remand.

However, courts sitting in equity are not allowed to disregard the law in its entirety. It is well established that "[l]egal rights are as safe in chancery as they are in a court of law." *Manufacturers' Finance Co. v. McKey*, 294 U.S. 442, 449 (1935), quoting *Colonial Trust Co. v. Central Trust Co.*, 243 Pa. 268, 276; 90 Atl. 189 (Pa. 1914). It is also well established "that a court of equity, in the absence of fraud, accident or mistake, cannot change the terms of a contract." *Hedges v. Dixon County*, 150 U.S. 182, 189 (1893). In *Manufacturers' Finance Co.*, Manufacturers' and Grigsby-Grunow Company entered into a contract to purchase accounts receivable. In exchange for the purchase money, Manufacturers' agreed to pay the amount in the accounts less service costs. Grigsby-Grunow Company then became the subject of a non-bankruptcy receivership, and the receiver refused to pay the outstanding amounts in the accounts. The district court ordered the receiver to pay, but only a lesser amount than stated by the contract. The district court then denied any further relief, finding the demands were inequitable and Manufacturers' hands were unclean. The court of appeals affirmed. In reversing the court of appeals, the Supreme Court held that the contract bound the receiver as it had bound the company under the receivership. *See id*. The contract was valid under state law, and no mistake or fraud was alleged. As such, the court could not ignore the legal right, regardless of how "strong an appeal may be to the conscience of a chancellor for equitable relief." *Id.* at 449. Because courts in equity are bound by the law as much as courts of law, courts supervising

receiverships cannot simply ignore applicable state and federal laws.

The rights of secured creditors to their security interests are among those protected by law. As counsel for the Receiver concedes, it has been well established that a "receiver appointed by a federal court takes property subject to all liens, priorities or privileges existing or accruing under the laws of the State." *Marshall v. New York*, 254 U.S. 380, 385 (1920).  Another well established principle of receiverships is that "a receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment." *Cates v. Musgrove Petroleum Corp., Inc.*, 190 Kan. 609, 376 P.2d 819, 821 (Kan. 1962). Further, to the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principal of equality of distribution." *Ticonic National Bank v. Sprague*, 303 U.S. 406, 412 (1938). In *In re Real Property Located at [Redacted] Jupiter Drive*, 2007 U.S. Dist. LEXIS 65276 (D. Utah), a receivership was created in the wake of an investment scheme to develop realty on Jupiter Drive. The investment scheme was funded by a mix of secured creditors, unsecured creditors, and investors. The receiver wanted to distribute the proceeds of the receivership pro rata, regardless of creditor status. The court denied the receiver's request. *Id*. The court noted that pro-rata distributions are acceptable where funds are co-mingled and victims are similarly situated; however, the court found that secured creditors and unsecured creditors are not similarly situated under Utah law. *See id.* The court also rejected the receiver's argument that *Vanguard* allowed the court to ignore the legal rights of secured creditors, stating that *Vanguard* "does not hold that any and all state laws regarding a creditor's remedies may be ignored, but rather that under certain circumstances a

-7-

district court supervising a receivership may deny equitable remedies that might otherwise have been available to a creditor." *Id* at *12. The court further stated that "[s]tate lien priority law is not an "equitable remedy" of a creditor, but a legal status." *Id.* Since the receiver did not point to any authority that allowed the court to ignore state laws regarding secured creditor status, the court made the receiver distribute the receivership funds based on lien priority.[10] *Id.*

In sum, this Court has broad powers to craft an equitable remedy in the distribution of the receivership assets. It may deny some equitable remedies allowed by state law, but it cannot ignore state and federal laws. In particular, this Court must respect contract rights, the status of secured creditors, and secured creditors' rights to their interests in collateral.

### THE MOTION IS PREMATURE

In light of the powers given this Court in an equitable receivership, this Court must examine the following to determine whether the prepayment premiums are enforceable: whether Fannie Mae is a secured creditor, or what type of interest Fannie Mae has in the property concerned;[11] and the obligations the properties secure. The interests secured by the properties are defined by security instruments, or the underlying contract.

However, this Court need not conduct that examination, for the motion is not ripe. Under

---

[10] Most courts are hesitant to ignore the rights of secured creditors. *See e.g. SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009) (secured creditors were disallowed deficiency claims against the receivership, but they recovered from specific collateral and, generally, recovered a greater proportion of their claim than unsecured creditors or investors).

[11] Parties concede that Fannie Mae is a secured creditor with a first priority, perfected security interest in the following receivership properties: Cleburne Terrace Apartments, Encinito Apartments, The Charlestonian at Lake Charles Apartments, Abbie Lakes Apartments, Jefferson Chase Apartments, Meadow Walk Apartments, and Oak Hill Apartments. *See* (Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay and Memorandum in Support filed by Intervenor Defendant Fannie Mae, filed January 18, 2013 (CM/ECF No. 865).)

523 U.S. 296 (1998). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 300. Here, the prepayment premium clauses of the contract do not apply unless the Receiver tries to prepay the loan or if the Receiver tries to sell the property free and clear of existing liens. Even if the Receiver tries to sell the property, the clause may not apply if an acceptable buyer agrees to assume the obligation.

There currently is no default on any of the concerned properties, and there is no proposed sale before the Court at this time. The enforcement of the prepayment premiums is contingent upon a default, prepayment, or sale of the properties, which may or may not occur. As such, this motion is unripe.

## CONCLUSION

For the reasons explained above,

**IT IS ORDERED** that Intervener Fannie Mae's Motion to Enforce Contractual Prepayment Premiums and for Partial Relief from Stay (Docket No. 865) is DENIED without prejudice.

DATED this *15*th day of February, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge