HOLLAND & HART LLP
David K. Broadbent, #0442
Doyle S. Byers, #11440
Cory A. Talbot, # 11477
Steven M. Lau, # 13788
222 S. Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone:  801-799-5800
Fax: 801-799-5700

*Attorneys for Gil A Miller as Court-Appointed Receiver*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MANAGEMENT SOLUTIONS, INC., a Texas Corporation; WENDELL A. JACOBSON; ALLEN R. JACOBSON,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA TO STEPHEN QUESENBERRY, LLC**<br><br>Civil Action No. 2:11-cv-01165<br><br>Judge Bruce S. Jenkins |

Gil A. Miller, the Court-appointed receiver in this matter (the "Receiver"), submits this Memorandum in Opposition to Motion to Quash Subpoena to Stephen Quesenberry, LLC.

**I.      INTRODUCTION**

To quash the Receiver's subpoena, Stephen Quesenberry, LLC ("SQ") must prove that the requested documents are truly privileged and cannot satisfy its burden "by making a blanket claim" of privilege, but rather must establish privileged as to "specific . . . documents." *In re*

*Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010). Because SQ has not identified any specific privileged documents, the Court should deny SQ's Motion to Quash Subpoena to Stephen Quesenberry, LLC (CM/ECF No. 2514) (the "Motion") and order SQ to produce its QuickBooks files in native format, its bank records, and all other responsive documents related to Wendell Jacobson ("Wendell"), Allen Jacobson ("Allen"), Management Solutions Inc. and its affiliated entities ("MSI"),[1] and/or any individual or entity affiliated, associated, or involved with Wendell, Allen, and/or MSI. To the extent the Court permits SQ to withhold any responsive documents based on privilege, it should order SQ to produce a privilege log conforming with Federal Rule of Civil Procedure 26(b)(5).

## II.  ARGUMENT

### A.  Any Documents In SQ's Possession Are Not Privileged Because SQ Cannot Properly Act as a Law Firm Where One of Its Members is a Non-Lawyer.

Under the Utah Limited Liability Company Act, the Members of an LLC organized to perform professional services must be professionals "authorized under the laws of the jurisdiction where they reside to provide similar services." Utah Code Ann. § 48-2c-1508(1)-(2). In this case, SQ asserts that it is a law firm, and, thus, its members must be licensed to practice law. This provision comports with Utah Rule of Professional Conduct 5.4 that prohibits a lawyer from sharing of legal fees with or forming a partnership with a non-lawyer.

SQ's members are Stephen Quesenberry and Jami Quesenberry, Stephen Quesenberry's wife and a non-lawyer. (CM/ECF No. 2514, Ex. B thereto at 4). Thus, SQ cannot properly

---

[1] "MSI" includes Management Solution, Inc., Parkwood Management Company, LLC, Starwood Management Company, LLC, "together with any related entities owned, controlled, and/or under common control through Management Solutions, Inc." including, without limitation, those listed on Exhibit A to the December 15, 2011 Order Appointing Receiver, Freezing Assets, and Other Relief. (CM/ECF No.4).

operate as a law firm because one of its members is non-professional or under Utah's Rules of Professional Conduct, because Stephen Quesenberry would be sharing legal fees with and partnering with a non-lawyer.

Additionally, SQ claims it stopped providing legal services between April 2, 2013, and after April 30, 2015. (CM/ECF No. 2514 at 2 ¶¶ 3-5). However, SQ still conducted business operations, including disbursement of proceeds from SQ to other individuals or entities at Wendell and or Allen's direction, during that time. These facts undermine SQ's suggestion that it acted as a law firm.

Because SQ cannot properly act as a law firm, any documents in SQ's possession are not privileged. "[T]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). To the extent any privilege ever existed for any documents in SQ's possession, it was waived by disclosure of those documents to SQ, an LLC with a non-attorney member.

**B.    SQ Has Not Established that Any Documents Sought by the Subpoena are Privileged.**

Even setting aside the fact that SQ cannot properly act as a law firm, the Court should deny the Motion because SQ has not shown that any of the particular documents sought by the Subpoena are privileged. All privileges are construed "narrowly" because they are "in derogation of the search for truth." *ERA Franchise Sys., Inc.*, 183 F.R.D. at 278. "The party seeking to invoke the attorney-client privilege has the burden of establishing its applicability." *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998). "To carry the burden," SQ "must describe in detail the documents or information to be protected and provide

3

precise reasons for the objection to discovery." *ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 278-79 (D. Kan. 1998); *accord In re Grand Jury Proceedings*, 616 F.3d at 1183 (holding that a party cannot satisfy its burden "by making a blanket claim" of privilege and that it must establish the privilege as to "specific . . . documents").

For instance, although attorney billing and accounting records may contain privileged information, they "are not per se privileged" and "parties claiming the privilege will have to show its applicability to particular narrative statement in billing records." *United States v. Wittig*, No. 03-40142-01/02JAR, 2008 WL 5232786, at *2 (D. Kan. Dec. 15, 2008) (unpublished). At the very least, "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed" are not privileged. *ERA Franchise Sys., Inc.*, 183 F.R.D. at 279. Moreover, any documents that "are not privileged while in the hands of a party" are not privileged by "merely handing them to . . . counsel." *Falsone v. United States*, 205 F.2d 734, 739 (5th Cir. 1953) (holding that a client's tax returns and other ordinary business records are not privileged). And as discussed above, any communications with or documents sent to third parties are not privileged.

Here, SQ has done nothing more than make a blanket assertion that nearly all of the documents responsive to the Subpoena are privileged. However, it is doubtful that SQ's QuickBooks files (either for the IOLTA trust account or for SQ's business bank account) are privileged at all, unless SQ can show that they contain detailed descriptions of work performed for clients. The client identities, amount of fees paid, and general purpose of the work performed—the only information that one would typically expect to find in a QuickBooks file— are not privileged. Moreover, directions from Wendell or Allen to disburse proceeds from SQ to

4

other individuals or entities would have no bearing on legal advice and, thus, would not be subject to the privilege that SQ asserts in its Motion. And to the extent any billing records, invoices, or similar documents contain narrative statements, SQ bears the burden to establish privilege as to each narrative.

Because SQ has not made any effort to identify specific communications, documents, or portions thereof, that are protected by any privileged, the Court should deny the Motion.

### C. Documents Received, Sent, or Created Between April 1, 2013 and April 30, 2015 Are Not Privileged.

Even if some of the documents in SQ's possession, custody, or control are privileged, SQ asserts that it ceased providing legal services between April 2, 2013, and April 30, 2015. (CM/ECF No. 2514 at 2 ¶¶ 3-5). Thus, all responsive documents that it sent, received, or created during that time would not be privileged and should be produced. Thus, to the extent the Court limits the scope of the Subpoena, it should require SQ to produce responsive documents it sent, received, or created between April 2013 and April 2015.

### D. The Work-Product Doctrine Does Not Apply to Documents Prepared for Wendell and Allen After April 2012.

"[T]he work-product doctrine only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial." *In re Grand Jury Proceedings*, 616 F.3d at 1184. Specifically, this doctrine aims at protecting "the attorney's strategies and legal impressions" but "it does not protect facts concerning the creation of work product or facts contained within work product." *Id.* at 1185. As with the attorney client privilege, "[t]he party asserting work product privilege has the burden of showing the applicability of the doctrine. *Id.*

As noted above, SQ has not established that any of the documents in its possession are protected by the work-product doctrine. And with respect to documents related to Wendell and Allen, there is no work product protection available after April 2012. Wendell and Allen settled with the SEC in March 2012 and April 2012. (CM/ECF 2514 at 1 ¶ 1). After that time, none of SQ's documents related to Wendell and Allen would have been prepared "in anticipation of litigation" and, thus, would not be protected from disclosure by the work-product doctrine.

### E. The Judicial Proceedings Privilege Is Not an Evidentiary Privilege.

SQ also claims that the documents requested by the Receiver are protected from disclosure by the "judicial proceedings privilege." (CM/ECF 2514 at 4). However, the judicial proceedings privilege is not an evidentiary privilege. Instead, it is "an absolute privilege *protecting* attorneys and others involved in litigation *against suits arising from statements made related to the litigation*." *Westmont Maint. Corp. v. Vance*, 2013 UT App 236, ¶ 13, 313 P.3d 1149, 1152-53 (emphasis added). Thus, the judicial proceedings privilege does not give SQ any basis on which to withhold documents responsive to the Receiver's request.

### F. The Receiver Only Seeks Documents Related to MSI, Wendell, Allen, and Affiliated Individuals or Entities.

When the Receiver served the Subpoena on SQ, he was not aware that SQ claimed to perform legal services of any kind. In light of SQ's claim that it performed legal services, including services for many clients unrelated to the receivership, the Receiver is willing to narrow the scope of its production requests to exclude documents unrelated in any way to the receivership, Wendell, Allen, or MSI. However, SQ should be ordered to produce a native copy

of SQ's QuickBooks files and banking records[2] and all other documents, including correspondence, emails, memoranda, etc…, that refer to, relate to, or involve Wendell, Allen, MSI, and/or any individual or entity affiliated or involved with MSI in any capacity, including, without limitation, employees, investors, creditors, etc…. SQ can address any concern regarding the production of potentially-sensitive business or personal information by appropriately designating such documents under the Standard Protective Order pursuant to Local Rule 26-2.

The Receiver also is not interested in the production of **truly** privileged documents. However, SQ should be required to comply with its obligations under Rule 26(b)(5) and produce a privilege log so that the Receiver may challenge SQ's assertion of privilege as necessary.

### III.  CONCLUSION

SQ has not proven that any of the documents the Receiver seeks are actually privileged. Accordingly, the Court should deny the Motion, and order SQ to produce its QuickBooks (in native format) and bank records and all other responsive documents related to Wendell, Allen, MSI, or individuals or entities affiliated or involved with Wendell, Allen, and/or MSI in any way. To the extent SQ is permitted to withholds any documents on the basis of alleged privilege, SQ should be ordered to produce a privilege log confirming with Federal Rule of Civil Procedure 26(b)(5).

---

[2] The Receiver requires production of SQ's QuickBooks files and banking records to determine to what extent SQ has been involved in any transactions with Wendell, Allen, MSI, and/or any other individuals or entities affiliated or involved with Wendell, Allen, or MSI.

7

Dated:  June 5, 2015.

                Respectfully submitted,

                */s/ Steven M. Lau*
                David K. Broadbent
                Doyle S. Byers
                Cory A. Talbot
                Steven M. Lau
                *Attorneys for Gil A. Miller as Receiver*
                *for Management Solutions, Inc., Wendell*
                *A. Jacobson and Allen R. Jacobson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2015, I caused to be electronically filed the foregoing with the Court by CM/ECF, and the Court will send electronic notification to all counsel.

I also certify that I caused the foregoing to be served via first-class mail, postage prepaid, on the following:

Greg B. Bailey
P. O. Box 298
Fountain Green, UT 84632
Pro Se

Lanny Waite
Maxine Waite
PO Box 192
Logandale, NV 89021

／s／ Steven M. Lau

7814847_2