FILED
2016 SEP 9 AM 10:32
~~CLERK~~
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MANAGEMENT SOLUTIONS, INC., a Texas Corporation; WENDELL A. JACOBSON; ALLEN R. JACOBSON,<br><br>Defendants. | **MEMORANDUM DECISION REGARDING INTERVENOR BLACK CLIFFS INVESTMENTS, LLC**<br><br>Case No. 2:11-CV-01165-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter came before the court for bench trial on June 21, 2016 and continued through June 22 and June 23, 2016. Doyle Byers and Cory Talbot appeared on behalf of the Receiver, Gil Miller (the "Receiver"). Matthew Barneck and Steven Bergman appeared on behalf of Intervenor Black Cliffs Investments, LLC ("Black Cliffs").[1]

Having considered the parties' briefs, the evidence presented, the arguments of counsel, the relevant law, and the equities in this receivership, the court finds Black Cliffs is entitled to 49.005% of the net proceeds from the sale of Providence Village Apartments and 49.005% of the net operational cash and cash holdings of SA Townhomes, Ltd. ("SA Townhomes") subject to the following adjustments:

    i.    the Receiver shall repay SA Townhomes $121,408.25;

    ii.    Janison Investments, LLC ("Janison") shall repay Council Properties, LLC ("Council Properties") $291,000; and

---

[1] Intervenor Plaintiffs Matthew A. Nielson and Jill R. Nielson, and MJ5 Investments, LLC, sought the dismissal of their claims without prejudice. *See* Mot. for Dismissal of Certain Intervenor Pls., filed June 10, 2016 (CM/ECF No. 3085). As the motion was unopposed, it is herein granted, leaving intact the claims of Black Cliffs Investments, LLC.

    iii.    Black Cliffs owes Thunder Bay Mortgage, Inc. ("Thunder Bay") a $1.55 million obligation, and the Receiver is entitled to collect from and offset against any proceeds flowing from SA Townhomes and Janison to Black Cliffs to the extent of the $1.55 million obligation, plus prejudgment interest at a 10% annual rate.

This is an equitable determination as part of an equitable receivership, dictated by the particular circumstances at issue here. Black Cliffs owes the Receiver, as successor to Thunder Bay, $1.55 million. The Receiver has a duty to collect it. And fortunately, due to the special nature of the receivership, the Receiver has access to Black Cliffs' share of proceeds flowing from SA Townhomes and Janison and is in a position to perform an offset.

As previously determined by the court and as acknowledged by the parties,[2] counter-offsets were not an issue for trial.[3] Instead, they are an issue, if at all, in the claims proceeding.

## BACKGROUND

The following background information reflects stipulations by the parties and prior legal determinations by the court:

- Providence Village Apartments ("Providence Village"), also known as the Providence Estates Townhomes ("Providence Estates"), is a 106-unit apartment complex in San Antonio, Texas.[4]

- SA Townhomes was formed in 2003 by Phillip Allen and Keith Holst and other business entities they owned or controlled. Allen and Holst have no affiliation with Management Solutions, Inc. ("MSI"), Wendell Jacobson ("Jacobson"), or any other receivership entity.[5]

---

[2] The parties submitted an agreed form of pretrial order on June 17, 2016. While the order was not executed by the court, the stipulations of uncontroverted facts and uncontested issues of law contained therein were used by the parties at trial and were considered by the court. For the convenience of the parties, the court designates the June 17, 2016 suggested form of pretrial order as "Exhibit A."

[3] *See* Ex. A, at 13.

[4] *See id.* at 6.

[5] *See id.*

- By a Special Warranty Deed recorded December 11, 2003, SA Townhomes acquired title to Providence Village. SA Townhomes held title to Providence Village until the recent court-approved sale of the property.[6]

- Janison is a Texas limited liability company formed in October 2005.[7]

- The court has determined that Janison is a stand-alone, independent entity that was not part of a unitary enterprise with other MSI-related entities.[8]

- In July 2006, Janison acquired all of the general and limited partnership interests in SA Townhomes.[9]

- Shortly thereafter, MSI acquired from Janison the 1% general partner's interest in SA Townhomes, leaving Janison with a 99% limited partner's interest in SA Townhomes.[10]

- The court has determined that Janison's 99% limited partner's interest in SA Townhomes is a valid interest.[11]

- Black Cliffs purchased a 49.5% membership interest in Janison. Its ownership interest in Janison was and is a valid membership interest.[12]

- Council Properties and MSI, both receivership entities, have a 49.5% and a 1% membership interest in Janison, respectively.[13] The Receiver, as successor in interest to the receivership entities, thus has a 50.5% membership interest in Janison.

- The ownership of SA Townhomes and Janison has not changed since July 2006.[14]

---

[6] *See id.*

[7] *See id.*

[8] *See id.* at 7; Order RE: Black Cliffs' Ownership Interest, filed May 19, 2016 (CM/ECF No. 3072) at 2.

[9] *See* Ex. A, at 7.

[10] *See id.*

[11] *See* Order RE: Black Cliffs' Ownership Interest, filed May 19, 2016 (CM/ECF No. 3072) at 2.

[12] *See id.*; Ex. A, at 7, 12.

[13] *See* Ex. A, at 7.

[14] *See id.*

- Matthew Nielson and Jill Nielson jointly own 100% of Black Cliffs. Matthew Nielson is the manager of Black Cliffs.[15]

At trial, the parties further stipulated to the following facts related to the role Jacobson played in various receivership entities:[16]

- Jacobson served as the president of Thunder Bay from 2005 to the inception of this receivership case.

- Jacobson served as the president of MSI from 2005 until the inception of this case.

- Jacobson served as the manager of Janison from 2005 until the inception of this case.

- MSI was the general partner of SA Townhomes from 2006 to the inception of this receivership case.

- MSI was the manager of Council Properties from 2005 to the inception of this receivership case.

- MSI was the manager of Reserve at Abbie Lakes, LLC ("Reserve at Abbie Lakes") from 2005 to the inception of this receivership case.

Prior to trial, the Receiver filed a motion to confirm a private sale of Providence Village for a contemplated purchase price of $14,150,000.[17] No opposition to the motion was filed.[18] On July 1, 2016, after the close of trial, the court held a hearing on the motion to confirm the private sale of the property. Doyle Byers appeared on behalf of the Receiver. Matthew Barneck appeared on behalf of Black Cliffs. No objections were raised and no higher or better bids were offered.

---

[15] See id.

[16] See Trial Transcript Vol. I, at 20:6-21:8.

[17] See Mot. to Confirm Private Sale of Real Property Known as Providence Estates Located in San Antonio, Texas, and to Approve Sale Free and Clear of Liens with Valid Liens to Attach to Proceeds, filed May 31, 2016 (CM/ECF No. 3078).

[18] Note: Black Cliffs filed a response to the motion, but it did not oppose the sale. Instead, it requested that the Receiver hold in a separate account the portion of sale net proceeds and certain cash amounts that should be allocated to Black Cliffs. See Resp. to Mot. to Confirm Private Sale of Real Property Known as Providence Estates, filed June 14, 2016 (CM/ECF No. 3087).

The court granted the Receiver's motion and approved and confirmed the proposed sale.[19] The property was transferred thereafter.

## DISCUSSION

As the court considers the parties' arguments as to what Black Cliffs may or may not be owed and what offsets may or may not apply, context is critical. This case arises under the framework of an equitable receivership. "[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). "It is generally recognized 'that the district court has broad powers and wide discretion to determine ... relief in an equity receivership.'" *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (quoting *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982)); *see also Broadbent v. Advantage Software, Inc.*, 415 F. App'x 73, 78 (10th Cir. 2011) (unpublished); *F.D.I.C. v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("[O]ne common thread keeps emerging out of the cases involving equity receiverships—that is, a district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration."); 65 Am. Jur. 2d Receivers § 135 ("A federal district court presiding over an equity receivership has extremely broad power to supervise the receivership and protect receivership assets."). "A district judge supervising an equity receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the receivership . . . A district judge simply cannot effectively and successfully supervise a

---

[19] *See* Order Confirming a Private Sale of Real Property Known as Providence Estates Located in San Antonio, Texas, and to Approve Sale Free and Clear of Liens with Valid Liens to Attach to Proceeds, filed July 1, 2016 (CM/ECF No. 3103). Net proceeds amount to $5,755,147.38.

receivership and protect the interests of its beneficiaries absent broad discretionary power." *Hardy*, 803 F.2d at 1038.

It is within the context of this receivership and the dictates of equity that the court considers the following questions: (i) what percentage of net proceeds from the sale of Providence Village should flow through to Black Cliffs; (ii) what percentage of cash earnings and cash holdings of SA Townhomes should flow through to Black Cliffs; (iii) what accounting adjustments must be made for SA Townhomes and Janison before distributions are made; and (iv) what offsets, if any, should be applied against distributions of proceeds to Black Cliffs? The court will consider each in turn.

A. **Distribution of Net Proceeds From Sale of Providence Village**

SA Townhomes held a valid fee simple interest in Providence Village and was the sole owner of that property.[20] The court has determined that Black Cliffs has a valid 49.5% membership interest in Janison, which in turns holds a valid 99% limited partner's interest in SA Townhomes.[21] Given those interests and the resulting flow of rights from SA Townhomes to Janison and from Janison to Black Cliffs and the Receiver, Black Cliffs is entitled to 49.005% of the net proceeds from the sale of Providence Village, subject to any accounting and offset adjustments.

B. **Distribution of Cash Earnings and Cash Holdings of SA Townhomes**

The parties agree that, given the court's determination that Black Cliffs has a valid 49.5% membership interest in Janison and Janison has a valid 99% limited partner's interest in SA Townhomes, Black Cliffs through Janison is entitled to 49.005% of the net cash from the

---

[20] Ex. A, at 12.

[21] *See id.* at 12-13; Order RE: Black Cliffs' Ownership Interest, filed May 19, 2016 (CM/ECF No. 3072) at 2.

operations of SA Townhomes from the fourth quarter of 2011 through the present and 49.005% of the net cash balance held in certain existing accounts by or on behalf of SA Townhomes.[22]

In addition, Black Cliffs seeks prejudgment interest on the net cash from the operations of SA Townhomes since the Receiver's appointment, accrued at a rate of 6% per annum.[23] The court denies this request for interest. Black Cliffs can point to no contract provision which entitles them to interest payments. Indeed, Article 6.1 of SA Townhomes' Limited Partnership Agreement—which would govern the distribution of net earnings from the operation of SA Townhomes—states that "distributions from the Partnership to the respective Partners shall be made at such time and in such amounts as may be determined by a vote of a Majority of the General Partners."[24] It is uncontroverted that MSI holds the sole general partner interest in SA Townhomes.[25] Thus, it was within MSI's discretion—*i.e.*, the Receiver's discretion—to determine the timing of distributions.[26] Such discretion is inconsistent with the idea that Black Cliffs is entitled to prejudgment interest.

The court finds Black Cliffs through Janison is entitled to 49.005% of the net operational cash of SA Townhomes and 49.005% of the cash balance holdings of SA Townhomes, subject to any accounting and offset adjustments, but Black Cliffs is not entitled to prejudgment interest.

---

[22] *See* Ex. A, at 12-14.

[23] *See* Pl.'s Trial Ex. 32; Trial Transcript Vol. I, at 88:23-90:15; Trial Transcript Vol. III, at 424:17-20, 434:7-9.

[24] *See* Pl.'s Trial Ex. 6.

[25] *See* Ex. A, at 7.

[26] *See* Trial Transcript Vol. I, at 107:20-109:21.

## C. **Accounting Issues**

Before funds flow from SA Townhomes to Janison and from Janison to Black Cliffs and the Receiver, accounting adjustments must be made to settle amounts owed and owing among the entities themselves. Accounting adjustments for SA Townhomes and Janison will be addressed in turn.

### i. *SA Townhomes Accounting Adjustments*

For SA Townhomes, three accounting issues were presented at trial: (i) amounts SA Townhomes owes Arboretum, (ii) amounts SA Townhomes owes MSI for unpaid management fees, and (iii) amounts Texas Apartments owes SA Townhomes. After considering all three issues, the court finds the Receiver should pay SA Townhomes a net amount of $121,408.25.[27]

The first accounting issue is easy to resolve. The parties agree that SA Townhomes received net transfers of $47,075 from an account called Arboretum, now controlled by the Receiver, and that SA Townhomes should return the $47,075 to Arboretum.[28] Thus, the court finds that such amount should be repaid.

As to the second accounting issue, the Receiver contends that SA Townhomes owes MSI $56,869.83 in unpaid management fees. There were apparently several months between July 2006 and December 2011 when MSI did not receive a management fee based on 6% of the monthly rental income of Providence Estates. The Receiver argues the unpaid amount totals

---

[27] The court notes the process of transferring funds between SA Townhomes and Arboretum, SA Townhomes and MSI, or SA Townhomes and Texas Apartments is somewhat academic, as each is a receivership entity. But the process is nonetheless useful as an aid in computing the interest of Janison—and thus, ultimately, the interest of Black Cliffs—to proceeds.

[28] *See* Post-Trial Br. of Intervenor Black Cliffs Investments, LLC, filed July 20, 2016 (CM/ECF No. 3111) [hereinafter Black Cliffs' Post-Trial Br.] at 11; Receiver's Post-Trial Br. Regarding Dispute with Black Cliffs, filed Aug. 15, 2016 (CM/ECF No. 3127) [hereinafter Receiver's Post-Trial Br.] at 30; Pl.'s Trial Ex. 39; Rec. Trial Ex. 22; Trial Transcript Vol. I, at 92:1-93:2, 109:22-110:1; Trial Transcript Vol. II, at 176:1-177:8.

$56,869.83.[29] Black Cliffs never directly addresses this issue. Instead, as will be further analyzed below, Black Cliffs points out that the U.S. Department of Housing and Urban Development ("HUD") did not approve MSI as the managing agent permitted to collect management fees until July 16, 2009.[30]

The court is not inclined to require SA Townhomes to compensate MSI for $56,869.83 in unpaid management fees. Only SA Townhomes was obligated to pay MSI management fees, and HUD precluded SA Townhomes from doing so until July 16, 2009. Thus, the only management fees SA Townhomes should be required to pay are those arising after July 2009. The Receiver only identifies $3,952.79 in unpaid management fees accruing between August 2009 and December 2011.[31] This amount is all the court will require SA Townhomes to pay.

Finally, as to the third accounting issue, Black Cliffs argues an account called Texas Apartments, now controlled by the Receiver, owes SA Townhomes $172,436.04. Black Cliffs identifies four payments made from SA Townhomes to Texas Apartments in 2006 and 2007, totaling $131,436.04, which are memorialized in the financial records of SA Townhomes and Texas Apartments.[32] Furthermore, Black Cliffs identifies an additional $41,000, memorialized in the financial records of Texas Apartments, as owed to SA Townhomes.[33] These amounts make up the $172,436.04 Black Cliffs contends SA Townhomes should be repaid.[34] The Receiver takes issue with both the $131,436.04 and the $41,000 obligations. As to the first, the Receiver

---

[29] *See* Rec. Trial Ex. 23; Trial Transcript Vol. II, at 177:14-178:24.

[30] *See* Pl.'s Trial Ex. 38, at BC004975; Trial Transcript Vol. I, at 58:8-59:6.

[31] *See* Rec. Trial Ex. 23.

[32] *See* Pl.'s Trial Exhibits 33, 35, 45; Trial Transcript Vol. I, at 93:3-96:14.

[33] *See* Pl.'s Trial Ex. 45; Trial Transcript Vol. I, at 97:7-99:20.

[34] *See* Pl.'s Trial Exhibits 45, 46; Trial Transcript Vol. I, at 99:22-100:9.

argues that SA Townhomes owed some unknown entity four different items, totaling

$131,436.04, and that when SA Townhomes subsequently transferred $131,436.04 to Texas

Apartments, those two sets of transactions effectively canceled each other out.[35] Thus, the

Receiver argues, because the $131,436.04 that SA Townhomes paid to Texas Apartments

satisfied obligations SA Townhomes owed to an unknown entity, Texas Apartments should not

be required to pay that amount back. As to the $41,000 obligation, the Receiver argues that the

financial records of Texas Apartments and SA Townhomes are inconsistent, as the records of SA

Townhomes do not reflect an additional $41,000 amount owed.[36]

      The court finds that Texas Apartments should reimburse SA Townhomes $172,436.04.

The theory that SA Townhomes owed an unknown entity $131,436.04 and that the payments

from SA Townhomes to Texas Apartments in some way cleared that obligation between SA

Townhomes and the unknown entity is not supported by the evidence.[37] Indeed, the idea that the

transfers from SA Townhomes to Texas Apartments created no obligation on the part of Texas

Apartments is inconsistent with the financial records of Texas Apartments itself. Texas

Apartments' notes receivable account indicates a negative notes receivable balance—or, in other

words, a notes payable obligation[38]—of $172,436.04 owed to SA Townhomes.[39] As further

analyzed below, the Receiver depends on the accuracy of receivership financial records when he

---

[35] *See* Rec. Trial Ex. 26; Trial Transcript Vol. II, at 185:13-188:6.

[36] *See* Trial Transcript Vol. II, at 188:9-23.

[37] *See id.* at 195:4-196:25; Trial Transcript Vol. III, at 323:24-329:11.

[38] *See* Trial Transcript Vol. I, at 98:10-17; Trial Transcript Vol. II, at 194:19-24; Trial Transcript Vol. III, at 329:21-25.

[39] *See* Pl.'s Trial Ex. 45; Trial Transcript Vol. I, at 97:22-99:13. Note: while accounting records often refer to and are held in the name of Providence Estates, in reality, SA Townhomes is the relevant legal entity while Providence Estates is the property SA Townhomes owns. For purposes of accounting records, the two terms are often used interchangeably. *See* Trial Transcript, Vol. II, at 155:18-156:2.

asserts a $2.4 million offset against Black Cliffs.[40] It is then equitable and consistent to likewise rely here on the accuracy of the receivership records of Texas Apartments. Thus, the court finds Texas Apartments owes SA Townhomes $172,436.04.[41]

Having determined that SA Townhomes owes Arboretum $47,075, SA Townhomes owes MSI $3,952.79, and Texas Apartments owes SA Townhomes $172,436.04, the court finds that the Receiver should pay SA Townhomes the net amount of $121,408.25.

     ii.   *Janison Accounting Adjustments*

As to Janison, two accounting issues were presented at trial: (i) amounts Janison owes Council Properties, and (ii) amounts MSI owes Janison as reimbursement for Janison's management fee payments. After considering both issues, the court finds Janison should repay Council Properties $291,000.

For the first accounting issue, the parties agree Council Properties loaned Janison $156,000 in January 2008 and $135,000 in January 2011 and that neither amount was repaid.[42] Thus, the court finds Janison owes Council Properties $291,000.

As to the second accounting issue, Black Cliffs argues Janison should be repaid the $173,337 it paid MSI in management fees for MSI's management of Providence Village. The relevant facts for this issue are uncontested: SA Townhomes paid MSI management fees in 2006,

---

[40] The court hereafter finds that the actual amount of Black Cliffs' obligation is $1.55 million, plus prejudgment interest.

[41] Note: during trial, there was some initial misunderstanding as to the differences between Rec. Trial Ex. 26 and Pl.'s Trial Ex. 35, both of which purport to be an export from the same QuickBooks file. *See* Trial Transcript Vol. II, at 182:2-185:6. It was later clarified that the differences between the two exhibits simply reflected differences in the versions of QuickBooks accounting software relied upon by the parties' experts. *See* Trial Transcript Vol. III, at 281:20-284:4, 319:20-323:15. The version relied upon by Black Cliffs' expert in Pl.'s Trial Ex. 35 collapsed multiple journal entries into a single entry, namely the second entry which contains the memo line "multiple." *See* Pl.'s Trial Ex. 35, at 35-000002. In contrast, the version relied upon by the Receiver's expert in Rec. Trial Ex. 26 expands that single entry into four separate entries. *See* Rec. Trial Ex. 26.

[42] *See* Pl.'s Trial Exhibits 36, 39; Rec. Trial Exhibits 21, 24; Trial Transcript Vol. I, at 69:3-19, 71:4-11, 100:16-102:12, 109:22-110:5; Trial Transcript Vol. III, at 426:13-15, 450:11-14.

2007, and 2008, totaling $139,822; these payments preceded HUD's approval of MSI as property manager of Providence Village and thus preceded the period in which MSI was authorized to collect management fees from SA Townhomes; MSI was required to pay $139,822 back to SA Townhomes; in 2009, Janison paid MSI $173,336.79, which represented a repayment of the $139,822 MSI returned to SA Townhomes plus $33,512.26 in additional management fees.[43] Black Cliffs argues Janison's payment was improper because Janison had no management agreement with MSI, Janison had no obligation to pay MSI's management fees, and because HUD had disallowed SA Townhomes' payment of management fees for that time period.[44]

The court finds that MSI need not return the $173,336.79 management fees payment to Janison. It is undisputed that MSI performed management services for Providence Village.[45] It is undisputed that nothing in Janison's financial records indicates that its $173,336.79 payment was a loan or that MSI had to repay it.[46] Further, it is undisputed that Dustin Barrett, MSI's chief financial officer, notified Matthew Nielson in an email that Janison had paid MSI's management fees,[47] yet Black Cliffs offered no evidence that Nielson responded to Barrett's email or otherwise objected to the payment.[48] Janison's decision to pay management fees for which it had no obligation was entirely Janison's decision. The court will not undo Janison's exercise of discretion.

---

[43] *See* Pl.'s Trial Ex. 36, at 36-000003; Pl.'s Trial Ex. 37, at 37-000015; Pl.'s Trial Ex. 38, at 38-000014; Pl.'s Trial Ex. 39; Rec. Trial Ex. 21; Rec. Trial Ex. 23, at 23.0001; Trial Transcript Vol. I, at 56:10-64:2, 102:3-105:23, 110:6-14; Trial Transcript Vol. II, at 201:5-202:21; Trial Transcript Vol. III, at 450:15-451:6.

[44] *See* Trial Transcript Vol. III, at 425:23-426:13.

[45] *See* Trial Transcript Vol. I, at 68:24-69:2.

[46] *See* Trial Transcript Vol. I, at 110:6-14; Trial Transcript Vol. II, at 180:4-19.

[47] *See* Rec. Trial Ex. 21; Trial Transcript Vol. I, at 65:25-68:17.

[48] *See* Trial Transcript Vol. I, at 68:18-23.

As such, the court finds, as the only accounting adjustment for Janison, that Janison shall repay Council Properties $291,000.

D. **Offsets**

Having determined that Black Cliffs is entitled to 49.005% of net proceeds from the sale of Providence Village and 49.005% of the net operational cash and cash holdings of SA Townhomes, subject to any accounting and offset adjustments, and having heretofore determined the accounting adjustments to be applied, the court now comes to the issue that was at the heart of trial—offsets. This issue can be framed as two questions. First, is there an existing obligation between Black Cliffs and Thunder Bay? Second, if so, can the Receiver, as successor to Thunder Bay, offset the obligation due Thunder Bay by Black Cliffs against distributions that would otherwise flow through SA Townhomes and Janison to Black Cliffs?

　　i.　*Existing Obligation Between Black Cliffs and Thunder Bay*

In August 2005, Black Cliffs obtained a 24.75% membership interest in Reserve at Abbie Lakes.[49] The financial records of Reserve at Abbie Lakes record on August 3, 2005 the creation of a $2.625 million capital account for Black Cliffs with the entry memo "Purchase 24.75% Per Agreement."[50] At that time, Black Cliffs contributed no cash to obtain the 24.75% membership interest.[51] Instead, the records of Reserve at Abbie Lakes indicate on August 3, 2005 the creation of a $2.625 million notes receivable obligation from Black Cliffs with the entry memo "Purchase 24.75% Per Agreement."[52] On June 26, 2006, Reserve at Abbie Lakes recorded a $225,000 deposit from Black Cliffs, which decreased Black Cliffs' notes receivable obligation to $2.4

---

[49] *See* Rec. Trial Ex. 6; Trial Transcript Vol. II, at 133:25-135:14.

[50] *See id.*

[51] *See* Trial Transcript Vol. II, at 135:15-18, 252:18-253:25.

[52] *See* Rec. Trial Ex. 5; Trial Transcript Vol. II, at 135:19-136:9.

million.[53] Black Cliffs made no other cash payments towards its ownership interest in Reserve at Abbie Lakes other than the $225,000.[54] But two other payments were made, one for $1 million in June 2006 and one for $1.4 million in December 2006.[55] These payments were made by Thunder Bay. In June and December 2006, the financial records of Thunder Bay show a $1 million and a $1.4 million transaction to Black Cliffs—each with the memo "loan"—for a total notes receivable balance for Black Cliffs of $2.4 million.[56] It appears Thunder Bay acquired Black Cliffs' $2.4 million obligation to Reserve at Abbie Lakes, such that Black Cliffs' now owed $2.4 million to Thunder Bay.[57]

In 2007, through payments made in June, July, and August of that year, Reserve at Abbie Lakes repurchased Black Cliffs' membership interest for $2.35 million.[58] Black Cliffs received $2.35 million for its interest, but Black Cliffs did not use the $2.35 million to settle its $2.4 million obligation to Thunder Bay.[59] That obligation remained.

Thunder Bay's notes receivable account records three payments in 2011 that reduced the $2.4 million balance to $1.55 million.[60] The first two payments were made in July 2011 by Gateway Properties, LLC ("Gateway Properties") in the amounts of $100,000 and $250,000,

---

[53] *See* Rec. Trial Ex. 5; Trial Transcript Vol. II, at 136:22-137:12.

[54] *See* Trial Transcript Vol. II, at 241:5-12, 253:7-25, 274:2-6; Trial Transcript Vol. III, at 315:20-22.

[55] *See* Rec. Trial Ex. 5.

[56] *See* Rec. Trial Ex. 4; Trial Transcript Vol. II, at 137:17-138:16.

[57] *See* Trial Transcript Vol. II, at 138:17-23.

[58] *See* Rec. Trial Exhibits 6, 7, 8, 9, 37, 38, 39, 40; Trial Transcript Vol. II, at 140:9-20, 143:11-154:16, 247:12-249:3. *See also* Black Cliffs' Post-Trial Br., *supra* note 28, at 24.

[59] *See* Trial Transcript Vol. II, at 154:20-25.

[60] *See* Rec. Trial Ex. 4.

which reduced the notes receivable balance to $2.05 million.[61] These two payments are also reflected in the records of Gateway Properties.[62] The third payment was made in August 2011 by Council Properties in the amount of $500,000. This payment is similarly reflected in the records of Council Properties.[63] This final payment reduced Thunder Bay's notes receivable account balance owed by Black Cliffs to $1.55 million. The notes receivable account balance remains at $1.55 million today.[64]

These three payments from Gateway Properties and Council Properties—totaling $850,000 and reducing Black Cliffs' obligation to $1.55 million—may or may not have been financially, substantively, or ethically sound. The Receiver presented several arguments for why they were not and for why they should be disregarded.[65] But as far as Thunder Bay was concerned, these three payments reduced Black Cliffs' obligation to Thunder Bay by $850,000. And at the time of the Receiver's appointment, Thunder Bay's records indicated Black Cliffs only owed Thunder Bay $1.55 million. It would be inequitable for the Receiver or the court to give credence to Thunder Bay's records for purposes of holding Black Cliffs accountable for the initial $2.4 million obligation, but then to dismiss Thunder Bay's own records when it comes to the partial repayment of such obligation.

---

[61] *See id.*

[62] *See* Pl.'s Trial Ex. 43.

[63] *See* Rec. Trial Exhibits 4, 33, 34; Pl.'s Trial Ex. 44; Trial Transcript Vol. II, at 167:2-169:17

[64] *See* Rec. Trial Ex. 4.

[65] *See* Rec. Trial Exhibits 35, 36; Trial Transcript Vol. II, at 165:1-173:25, 221:5-223:6; Trial Transcript Vol. III, at 445:6-446:17.

As such, the court finds that Black Cliffs owes an existing obligation of $1.55 million to Thunder Bay, as reflected in Thunder Bay's notes receivable account.[66]

### ii. Offsetting Black Cliffs' Obligation to Thunder Bay Against Distributions

Having determined that Black Cliffs owes an existing obligation of $1.55 million to Thunder Bay, the question remains whether the Receiver can offset that amount against distributions that would otherwise flow through SA Townhomes and Janison to Black Cliffs. Black Cliffs raises a number of arguments for why the Receiver is not entitled to such an offset, including arguments related to standing, fiduciary duties, statute of limitations, and mutuality. As discussed below, the court finds these arguments unpersuasive and determines that the Receiver, as successor to Thunder Bay, may use the unpaid $1.55 million obligation, plus prejudgment interest, as an offset against any distributions by the Receiver to Black Cliffs.

First, Black Cliffs argues that because Thunder Bay is not a creditor and not an owner of either SA Townhomes or Janison, the Receiver lacks standing to assert a claim on Thunder Bay's behalf.[67] But Thunder Bay is a receivership entity. And even if Black Cliffs believes the sale of Providence Village effectively or essentially triggers the dissolution of SA Townhomes and Janison, that is different from the court actually ordering the dissolution of SA Townhomes and Janison, which it has not. The Receiver, like Black Cliffs, has a membership interest in Janison.

---

[66] The Receiver offered an unsigned promissory note for $1.4 million as Rec. Trial Ex. 41 and an unsigned promissory note for $1 million as Rec. Trial Ex. 42. Black Cliffs objected to the exhibits, and the court reserved on the issue. As these exhibits provide some indication of the existence of a $2.4 million obligation, the court will admit them into the record. But, as the notes are unsigned, the court considers the exhibits as having limited evidentiary value. The court finds Black Cliffs' $225,000 payment to Reserve at Abbie Lakes as more persuasive evidence of Black Cliffs' existing obligation. It is difficult to explain Black Cliffs' $225,000 payment, made close to a year after it received its interest in Reserve at Abbie Lakes, if Black Cliffs did not owe money for its interest. Indeed, Black Cliffs offered no alternative explanation for the payment. The court also finds significant Matthew Nielson's deposition testimony that he assumed Black Cliffs' interest in Reserve at Abbie Lakes was not reported as income on Black Cliffs' tax returns because the interest was obtained through a loan. See Trial Transcript Vol. II, at 235:11-240:3.

[67] See Black Cliffs' Post-Trial Br., supra note 28, at 13-14. See also Trial Transcript Vol. I, at 10:15-12:3; Trial Transcript Vol. II, at 270:8-23; Trial Transcript Vol. III, at 427:8-18.

In order for the Receiver to realize the value of his interest in Janison, and thereby promote the purpose of the receivership, Providence Village was sold. The trial between the parties, held within the context of an equitable receivership, considered the flow of proceeds from SA Townhomes and Janison and considered the substance of obligations between the parties. The liquidation of SA Townhomes and Janison was not considered. During a trial held within the context of an equitable receivership, it is appropriate for the Receiver—who is responsible for all receivership entities and assets, including Thunder Bay and Janison—to seek to collect on relevant obligations. Thus, the court rejects Black Cliffs' standing arguments.

Second, Black Cliffs argues that the Receiver's fiduciary duties as general partner of SA Townhomes and as manager of Janison require the Receiver to put the interests of Janison and Black Cliffs ahead of the separate interests of the receivership estate, and that the Receiver is thus precluded from asserting, as successor to Thunder Bay, an offset against Black Cliffs.[68] This argument is misguided. To impose duties on the Receiver in the manner Black Cliffs suggests would put the Receiver in an untenable position. It would require the Receiver to act contrary to the duties outlined in the Court's order appointing the Receiver, including the obligation to act in the best interest of the receivership estate.[69] Thus, the court rejects Black Cliffs' state footed fiduciary duty argument.

---

[68] *See* Trial Br. of Intervenor Black Cliff Investments, LLC, filed June 17, 2016 (CM/ECF No. 3096) [hereinafter Black Cliffs' Trial Br.] at 10-12; Black Cliffs' Post-Trial Br., *supra* note 28, at 23. *See also* Trial Transcript Vol. III, at 427:19-429:5.

[69] *See* Order Appointing Receiver, Freezing Assets and Other Relief, filed Dec. 15, 2011 (CM/ECF No. 4).

Third, Black Cliffs argues the Receiver's offset claim is barred by a four year statute of limitations.[70] Black Cliffs relies on Utah Code Ann. § 78B-2-307, which states that the statute of limitations for claims "upon a contract, obligation, or liability not founded upon an instrument in writing" is four years "after the last charge is made or the last payment is received."[71] Black Cliffs maintains that the Receiver did not raise Black Cliffs' obligation to Thunder Bay early enough, making the claim time barred. Though Black Cliffs acknowledges Utah case law that allows offset claims otherwise barred by the statute of limitations, Black Cliffs contends this allowance is only made when the claims to be offset coexist.[72] Black Cliffs argues the Receiver's claims and Black Cliffs' claims have never coexisted, because the Receiver's claim—based on Thunder Bay's loans—arose when the loans were made in 2006 and expired under the statute of limitations in December 2010, while Black Cliffs' claims against the Receiver did not arise until January 2012 at the earliest.[73]

It is not clear that the statute of limitations has any bearing on whether the Receiver, as successor to Thunder Bay, can use Black Cliffs' $1.55 million obligation as an offset against proceeds that would otherwise flow to Black Cliffs. The statute of limitations is a defense. But as the Receiver has never sued Black Cliffs to recover on the $1.55 million debt, there has been no occasion for raising such a defense. Further, a statute of limitations is not a statute of repose—it

---

[70] *See* Black Cliffs' Post-Trial Br., *supra* note 28, at 14-16; Post-Trial Reply Br. of Intervenor Black Cliffs Investments, LLC, filed Aug. 22, 2016 (CM/ECF No. 3133) [hereinafter Black Cliffs' Post-Trial Reply Br.] at 3-6. *See also* Trial Transcript Vol. I, at 12:4-23; Trial Transcript Vol. II, at 270:24-271:21; Trial Transcript Vol. III, at 429:6-430:14.

[71] Utah Code Ann. § 78B-2-307(1)(a).

[72] *See* Black Cliffs' Post-Trial Reply Br., *supra* note 70, at 4-6.

[73] *See id.* at 5.

does not extinguish duties or claims. Thus, whether the statute of limitations has run or not, Black Cliffs still owes a duty to the Receiver to repay its obligations.

Nevertheless, even assuming statute of limitations and coexistence are relevant to this proceeding, the court finds neither is a bar to the Receiver's offset claim. As previously determined, Thunder Bay loaned $2.4 million in 2006, but the last three payments on the loan did not occur until July and August of 2011. Therefore, as the four year statute of limitations under Utah Code Ann. § 78B-2-307(1)(a) is not available until after "the last payment is received," a claim based on the Thunder Bay loan would not be subject to a statute of limitation defense.

As such, whether relevant or not, Black Cliffs' statute of limitations argument is simply unavailable.

Finally, Black Cliffs contends that a lack of mutuality defeats the Receiver's offset claim.[74] Under Utah law, "[t]he doctrine of setoff ... is essentially an equitable one requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against another."[75] "As a general rule, in order to warrant a set-off the demands must be mutual and subsisting between the same parties."[76] Black Cliffs argues there is no mutuality in the present case—and thus there can be no offset—

---

[74] See Black Cliffs' Trial Br., *supra* note 68, at 4-10; Black Cliffs' Post-Trial Br., *supra* note 28, at 19-22; Black Cliffs' Post-Trial Reply Br., *supra* note 70, at 6-8. *See also* Trial Transcript Vol. I, at 13:3-14:21; Trial Transcript Vol. III, at 430:15-431:18.

[75] *Bichler v. DEI Systems, Inc.*, 2009 UT 63, ¶15, 220 P.3d 1203 (quoting 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 6 (2008)).

[76] *Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130, 133 (Utah Ct. App. 1990) (quoting 80 C.J.S. *Set-off and Counterclaim* § 48a(2) (1953)). *See also First Sec. Bank of Utah v. Utah Turkey Growers, Inc.*, 610 P.2d 329, 333 (Utah 1980) ("we concur with plaintiff's assertion that recoupment and setoff must rest upon a mutuality of obligation"); *Sweazey v. Cyprus Credit Union*, 2003 UT App 2, 2003 WL 23382 (unpublished) ("Very simply, given these facts, no combination of Plaintiff, Plaintiff's son, and Defendant have mutual obligations giving rise to even the opportunity for a setoff.").

because Black Cliffs' claims are with SA Townhomes and Janison, whereas its loan obligation, which the Receiver wants to use as an offset, is with Thunder Bay.[77]

The court finds that the equities of this case dictate that Black Cliffs' mutuality argument fails. The Tenth Circuit evaluated Utah law and found "Utah courts would allow setoff absent mutuality when equitable considerations are present."[78] This conclusion makes sense, particularly within the unique context of an equitable receivership. As the Tenth Circuit noted in *Broadbent v. Advantage Software, Inc.*, "'[a] district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power.' Accordingly, in fashioning relief in an equity receivership, a district court has discretion to summarily reject formalistic arguments that would otherwise be available in a traditional lawsuit . . . Indeed, the district court is authorized and expected to determine claims in an equity receivership based on equitable, rather than formalistic, principles."[79] Here, the Receiver is holding funds that Black Cliffs claims a percentage of based on its ownership interest in Janison. But within the history of Black Cliffs acquiring its ownership interest in Janison is the history of Black Cliffs also acquiring an obligation to Thunder Bay. Black Cliffs should not get the benefit of its ownership interest while it still owes money to the receivership estate. It is equitable for the Receiver to offset any distribution to Black Cliffs by the obligation Black Cliffs owes to Thunder Bay. Thus, the court rejects Black Cliffs' mutuality argument.

Having determined that each of Black Cliffs' arguments for disallowing the Receiver's offset is unavailing, the court finds that the Receiver may offset $1.55 million, plus prejudgment

---

[77] *See* Black Cliffs' Trial Br., *supra* note 68, at 8; Black Cliffs' Post-Trial Br., *supra* note 28, at 19-20.

[78] *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1564 n.2 (10th Cir. 1995).

[79] 415 Fed. Appx 73, 78-79 (10th Cir. 2011) (unpublished) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)) (internal citations omitted).

interest at an annual 10% rate, against distributions that would otherwise flow through SA
Townhomes and Janison to Black Cliffs.[80]

### E. **Counter-Offsets**

Black Cliffs argues that it is entitled to unpaid finder's fees for work it performed in
locating properties for Jacobson to acquire, and that such unpaid fees should counter-offset or
extinguish any amount Black Cliffs owes to Thunder Bay.[81] The court previously determined, as
acknowledged by the parties, that the issue of unpaid finder's fees was not an issue for trial but
was instead an issue, if at all, for the claim proceeding through an amended proof of claim.[82]

Notwithstanding the court's ruling, Black Cliffs presented evidence at trial related to
unpaid finder's fees, arguing that the Receiver had offered evidence at trial that opened the door
to the issue.[83] The Receiver sought to have Black Cliffs' counter-offset evidence stricken as
beyond the scope of trial.[84] The court reserved on the motion to strike.[85]

Upon further consideration of the trial transcript, the court finds the Receiver did not
make unpaid finders fees and counter-offsets issues for trial. Instead, the Receiver sought to elicit
evidence as to the *cash* payments Black Cliffs made towards its interest in Reserve at Abbie

---

[80] The interest calculation should be performed with the same conservative starting dates reflected in Rec.
Trial Ex. 27, and it should also reflect the three payments made in July and August 2011, which reduced the
outstanding balance to $1.55 million. The court notes that the Receiver argued during trial and in post-trial briefing
for prejudgment interest at an annual 10% rate, pursuant to Utah Code Ann. § 15-1-1(2). *See* Trial Transcript Vol. II,
at 174:1-175:19; Trial Transcript Vol. III, at 446:16-447:8; Receiver's Post-Trial Br., *supra* note 28, at 15. Although
Black Cliffs acknowledged the Receiver's interest calculation in post-trial briefing, Black Cliffs never disputed
during trial or during briefing the Receiver's calculation method. *See* Black Cliffs' Post-Trial Reply Br., *supra* note
70, at 4 n.2. As it was uncontested, the court adopts the Receiver's proposed interest rate.

[81] *See* Black Cliffs' Post-Trial Br., *supra* note 28, at 23-26.

[82] *See* Ex. A, at 13.

[83] *See* Trial Transcript Vol. III, at 333:7-337:3.

[84] *See id.* at 411:14-412:12.

[85] *See id.* at 415:5-9.

Lakes and towards repayment of the $2.4 million obligation. The Receiver did not present evidence as to non-cash payments. Nevertheless, the court will deny the Receiver's motion to strike. Black Cliffs' evidence for unpaid finder's fees is relevant insofar as it provides additional evidence that Black Cliffs did not pay cash towards its interest in Reserve at Abbie Lakes or its obligation to Thunder Bay, beyond the single $225,000 payment, and that Black Cliffs received for its interest in Reserve at Abbie Lakes the sum of $2.35 million.[86]

Having so ruled, the court reaffirms its prior determination that the issue of unpaid finder's fees should be considered and decided in the claims proceeding, where the parties can fully present evidence on the issue.

## CONCLUSION

As previously determined, Black Cliffs has a valid 49.5% membership interest in Janison, and Janison has a valid 99% limited partner's interest in SA Townhomes. Given the resulting flow of interests from SA Townhomes and Janison to Black Cliffs, the court finds Black Cliffs is entitled to 49.005% of the net proceeds from the sale of Providence Village and 49.005% of the net operational cash and cash holdings of SA Townhomes, subject to the following adjustments: (i) the Receiver shall repay SA Townhomes $121,408.25; (ii) Janison shall repay Council Properties $291,000; and (iii) the Receiver may offset any remaining cash amounts flowing from SA Townhomes and Janison to Black Cliffs by Black Cliffs' $1.55 million obligation, plus prejudgment interest at a 10% annual rate.

The Receiver shall provide a final accounting and a suggested form of judgment to the court, each reflecting these court determinations, within 10 days of the date of this memorandum opinion. After the final accounting is submitted to and approved by the court, final distributions

---

[86] It is for this limited purpose that the court will admit Pl.'s Trial Ex. 48 into the record.

flowing from SA Townhomes and Janison to Black Cliffs, if any, shall be made within 30 days thereafter.[87]

Black Cliffs may, if it so chooses, pursue claims for unpaid finder's fees in the claims proceeding.

DATED this 9 day of September, 2016.

Bruce S. Jenkins
United States District Judge

---

[87] The court notes the Receiver's request that the court reconsider its prior determination that the Receiver could not present a unitary enterprise defense at trial. *See* Mot. for Reconsideration, filed Aug. 15, 2016 (CM/ECF No. 3126). The Receiver argues (i) Black Cliffs obtained its interest in Janison through commingled investor funds, (ii) SA Townhomes and Janison were part of a unitary enterprise, and (iii) as such, SA Townhomes and its assets should be combined with the other receivership assets and Janison should be allowed a Class 5 claim according to the Plan of Distribution. *See id.* But the court finds that the Receiver walked away from such arguments for purposes of the present proceeding. In the prior litigation between the parties—*Miller, Receiver v. Black Cliffs Investments, LLC, et al.*, 2:12-cv-01172 (the "Clawback Action")—the Receiver identified several transfers from MSI-related entities to Black Cliffs and sought to recover such as fraudulent transfers. *See* First Am. Compl. (CM/ECF No. 32 in Clawback Action). The identified transfers included the payments Black Cliffs received for the repurchase of its membership interest in Reserve at Abbie Lakes. *See id.* at 8. Notably, the amended complaint made no mention of Thunder Bay's $2.4 million transfer to Reserve at Abbie Lakes. Ultimately, the Receiver decided to dismiss the Clawback Action and walk away from his claims to the repurchase payments. The Receiver essentially determined that those payments and the other payments identified in his amended complaint were too old to pursue. *See* Stipulated Dismissal of Action (CM/ECF No. 71 in Clawback Action) at 2. Having given up the Clawback Action, the Receiver is not in a position now, in this proceeding, to raise anew the repurchase payments, argue they flow from commingled investor funds, and contend that Janison and SA Townhomes should therefore be administered pursuant to the Plan of Distribution. As the Receiver chose to dismiss the Clawback Action, his unitary enterprise argument is relevant, if at all, in the claims proceeding. The motion for reconsideration is denied.